**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 18-CR-03053-CJW |
| vs. | **REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS** |
| DAVID VOGELPOHL, | |
| Defendant. | |

---

## I.    INTRODUCTION

The matter now before me is Defendant's Motion to Suppress Evidence. (Doc. 28.)  October 25, 2018, Defendant was charged by the Iowa Department of Public Safety with Harboring a Runaway Child Against Wishes of Parent.  (Def. Ex. A.)  On November 28, 2018, a Federal Grand Jury indicted Defendant with Sexual Exploitation of a Child.  (Doc. 2.)

The Honorable Charles J. Williams, United States District Court Judge, referred this motion to me for a Report and Recommendation.  On May 2, 2019, I held an evidentiary hearing on Defendant's motion.  Neither party offered testimony.  Counsel for both Defendant and the Government presented oral arguments.  Government's Exhibit 1 and Defendant's Exhibits A and B were offered and received.

For the following reasons, I respectfully recommend that the Court **deny Defendant's Motion to Suppress.**

## II.    SUMMARY OF THE EVIDENCE

### A.    The Arrest Warrant

On November 1, 2018, North Platte, Nebraska Police Investigator John Deal received a request from the Iowa Department of Public Safety to interview Defendant. North Platte officials had arrested Defendant and were preparing to extradite him pursuant to the October 25, 2018 Iowa arrest warrant for Harboring a Runaway Against Wishes of Parent.  (Def. Ex. A.) Officer Deal videotaped his approximately 90-minute interview with Defendant, the first three minutes of which are relevant to disposition of this motion.  (Gov. Ex. 1.)

### B.    The Interview

Investigator Deal interviewed Defendant on November 2, 2018 in an interrogation room at the North Platte Police Station.  Defendant was in handcuffs in an apparently locked interview room, but was otherwise not restrained.

Investigator Deal introduced himself to Defendant and stated, "Obviously, you're not in custody for anything you did here in North Platte" and "you're not in trouble here." (*Id.* at 11:53:06.)  Investigator Deal stated that Iowa investigators requested he talk to Defendant, but that, "Obviously, [he didn't] know what [was] going on in Iowa." (*Id.* at 11:53:48.)  Defendant volunteered  that the paperwork stated he was charged in Iowa with "harboring a runaway." (*Id.* at 11:53:53.)    Investigator Deal confirmed "that's what the warrant was for, and it looks like there's like a $5,000 bond, so I can't imagine it's some real high-level felony, from what I can understand."[1] (*Id.* at 11:54.)  Investigator Deal stated, "I wanted to chat with you about what's been going on the last few weeks if you're willing to talk with me." (*Id.* at 11:54:09.)  Defendant stated that three weeks earlier, he had been in Southern Missouri. (*Id.* at 11:54:21.)  At that point,

---

[1] Harboring a Runaway is an aggravated misdemeanor under Iowa law.  Iowa Code § 710.8(4).

Investigator Deal told Defendant he was going to read Defendant his *Miranda* rights before questioning him, and the following exchange occurred.[2]

| | |
|---|---|
| Investigator Deal: | . . . So, since I'm gonna ask you a question, I'm gonna read 'em to you. So— |
| Defendant: | Personally, I would like an attorney, though, I would. |
| Investigator Deal: | Okay, you want an attorney? |
| Defendant: | I would like an attorney. |
| Investigator Deal: | Okay, okay. I [inaudible] |
| Defendant: | I can talk right now, but I would like an attorney, though, regardless.[3] |
| Investigator Deal: | Here's the thing, though, if you request an attorney, I can't talk with you today. I just can't. |
| Defendant: | Well. . . |
| Investigator Deal: | I'd like to talk with you, but again, it's your right to have that attorney, but if you want to talk with me today, you're more than welcome to, but . . . . |
| Defendant: | I'm going to talk. I mean, I can't really request an actual attorney until I get to fuckin' Iowa, but . . . . |
| Investigator Deal: | That's not true. You are here. You are allowed an attorney. |
| Defendant: | Temporary. |
| Investigator Deal: | But you are allowed an attorney, so if you want to speak with one before talking with me, that's your right, but I can't talk with you unless . . . . |

---

[2] The exchange did not progress as orderly as it appears here. Rather, Defendant and Investigator Deal often talked over each during this conversation.

[3] The Government states that the audio is somewhat unclear at this point, and that it might be possible to hear Defendant's statement as, "I can't talk right now." In context, the Government argues that any confusion should be resolved in favor of interpreting Defendant's statement as, "I can talk right now" because "both the rest of the sentence and the subsequent conversation, where defendant and Investigator Deal clarified defendant's position, supports" that version of Defendant's statement. (Doc. No. 42 at 3 n.3.) I do not find the audio unclear at this point. I heard Defendant say, "I can talk right now." More importantly, Defendant agrees that he said, "I can talk right now." (Doc. 28-1 at 3.) The fact that Defendant's statement is at all in question makes Investigator Deal's decision to make further inquiry, as discussed *infra* at Part III.C.1., all the more reasonable.

| Defendant: | I don't want to speak with one right now.  I want to wait 'til Iowa to speak with one. |
| Investigator Deal: | Okay, well, let me read you these, and after I read 'em to you, you can decide what you want to do, okay? |
| Defendant: | Okay. |

(Gov. Ex. 1 at 11:54:39-11:55:26) (ellipses represent cut off or trailing sentences, not omitted words.)  Investigator Deal then read Defendant his *Miranda* rights.  (*Id.* at 11:55:27.)  Defendant stated that he understood his *Miranda* rights.  (*Id.* at 11:55:45.) Investigator Deal asked, "Are you willing to speak with me today?"  (*Id.* at 11:55:48.) Defendant answered, "Yeah, I've done nothing wrong."  (*Id.* at 11:55:52.)  Investigator Deal and Defendant talked for approximately one hour.

## III.    ANALYSIS

### A.    *The Parties' Arguments*

Defendant argues that all statements made to Investigator Deal and any evidence derived as a result of that interview must be suppressed because it violated his Fifth and Sixth Amendment rights to counsel.  Defendant argues that his Sixth Amendment right to counsel attached when the Iowa complaint and arrest warrant were filed on October 25, 2018 because the federal indictment filed on November 28, 2018 was based on the same facts and circumstances as the state charge and because he invoked his right to counsel.  (Doc. 28-1 at 4-5) (citing Def. Ex. B.)  Defendant also argues that the interview violated his Fifth Amendment right to counsel when Defendant was "clearly confused and known to have mental health deficiencies."  (*Id.* at 7) (emphasis omitted.)

The Government responds that Defendant's Sixth Amendment rights had not attached at the time of the interview because he was not yet indicted on the federal charge. Moreover, the Government asserts the elements of the Iowa crime are different from the elements of the federal charge.  (Doc. 42 at 4-5; May 2, 2019 Oral Arg.)  The Government also argues that Defendant voluntarily waived his *Miranda* rights during the interview and therefore his Fifth Amendment rights were not violated.  (*Id.* at 10.)

4

**B.     Defendant's Sixth Amendment rights had not attached on November 2, 2018.**

Defendant argues that his Sixth Amendment right to counsel had attached on November 2, 2018 because Harboring a Runaway Child Against Wishes of Parent is based on the same "facts and circumstances" as his current federal charge for Sexual Exploitation of a Child.  (Doc. 28-1 at 5.)  For support, Defendant cites Defense Exhibit B, a motion to dismiss his Iowa state charge filed by the Cerra Gordo County Attorney because "the State [had] been advised that the Defendant has been indicted in Federal Court to charges upon *the same facts and circumstances* in State Court." (*Id.* at 4-5) (quoting Def. Ex. B) (emphasis in original).)    Defendant further asserts that federal authorities; Iowa authorities; and Nebraska authorities, specifically Investigator Deal, "were collaborating in gathering evidence" that resulted in the current federal charge. (*Id.* at 4.)  The Government responds that Defendant's Sixth Amendment right to counsel had not attached at this point because the Iowa complaint and the federal indictment charge different crimes.

The Sixth Amendment to the United States Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall . . . have the assistance of counsel for his defence."  A criminal defendant's Sixth Amendment right to counsel attaches at the time that charges are brought against him either by "'formal charge, preliminary hearing, indictment, information, or arraignment.'"  *United States v. Bird*, 287 F.3d 709, 713 (8th Cir. 2002) (quoting *Brewer v. Williams,* 430 U.S. 387, 398 (1977)).  "Any statement about the charged crime that government agents deliberately elicit from a defendant without counsel present after the defendant has been indicted must be suppressed under the Sixth Amendment exclusionary rule." *Id.* (citing *Massiah v. United States,* 377 U.S. 201, 207 (1964)).  The Sixth Amendment right to counsel is offense specific. *United States v. Scott*, 831 F.3d 1027, 1033 (8th Cir. 2016) (citing *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)).  Accordingly, statements made during interviews and pertaining

5

to other crimes to which the Sixth Amendment right has not yet attached are admissible at a trial for those offenses. *Id.* Under the Sixth Amendment, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Bird*, 287 F.3d at 715 (quoting *Texas v. Cobb*, 532 U.S. 162, 173 (2001) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). If the statutory provisions require proof of essentially identical elements, there is only one offense for Sixth Amendment purposes. *See id.* (holding that the tribal rape and federal rape statutes at issue had "identical essential elements," and therefore charged the same offense).

The relevant state of Iowa charge, Iowa Section 710.8, Harboring a Runaway Child, provides:

> 2.    A person shall not harbor a runaway child with the intent of committing a criminal act involving the child or with the intent of enticing or forcing the runaway child to commit a criminal act.
>
> 3.    A person shall not harbor a runaway child with the intent of allowing the runaway child to remain away from home against the wishes of the child's parent, guardian, or custodian.
>
> .    .    .
>
> 4.    A person convicted of a violation of this section is guilty of an aggravated misdemeanor.

The Iowa Criminal Jury Instructions set forth the elements of the offense  as follows:

> 1.    On or about the _____ day of _____, 20___, defendant provided aid to, sheltered, or supported a child.
>
> 2.    Defendant intended to commit a criminal act involving the child or to force or entice the child to commit a criminal act.
>
> 3.    The child was under eighteen years of age.

6

4. The child was voluntarily absent from her home, without the consent of her parent.

Iowa State Bar Ass'n, Iowa Crim. Jury Instr., https://cdn.ymaws.com/www.iowabar.org/resource/resmgr/jury_instructions/ia_criminal_jury_instruction.pdf.

As applied to Defendant, the elements of 18 U.S.C. Section 2251(a), Sexual Exploitation of Children, are as follows:

1. Between in or about August 2018 and October 2018, [the minor] was under the age of 18 years;

2. Defendant knowingly persuaded, induced, or enticed [the minor] to engage in sexually explicit conduct;

3. Defendant voluntarily and intentionally did this for the purpose of producing one or more visual depictions of such conduct; and

4. Defendant caused one or more of the visual depictions of sexually explicit conduct to be produced using materials that had been shipped or transported in interstate or foreign commerce, or defendant knew or had reason to know that one or more of the visual depictions of sexually explicit conduct would be transported or transmitted in or affecting interstate or foreign commerce or using a means or facility of interstate or foreign commerce, or one or more of the visual depictions of sexually explicit conduct was actually transported or transmitted in or affecting interstate or foreign commerce or using a means or facility of interstate or foreign commerce.

The Eighth Circuit Model Criminal Jury Instructions set forth the elements of the offense as follows:

1. At the time alleged, the minor was under the age of eighteen years;

2. The defendant knowingly:
   a) persuaded, induced, enticed, or coerced the minor to engage in sexually explicit conduct; or

b)      had the minor assist another person or persons to engage in sexually explicit conduct; or

c)      transported the minor across state lines in any Territory or Possession of the United States with the intent that the minor engage in sexually explicit conduct;

3.      The defendant acted with the purpose of producing a visual depiction of such conduct or transmitting a live visual depiction of such conduct; and

4.      a)      the defendant knew or had reason to know that such visual depiction would be transported across state lines or in foreign commerce; or

       b)      the visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce by any means, including by computer or cellular phone; or

       c)      the visual depiction was actually transported or transmitted using any means or facility of interstate or foreign commerce.

Jud. Comm. on Model Jury Inst. for the 8th Cir., *Manual of Model Jury Instructions for the District Courts of the Eighth Circuit* (2017 ed.), http://www.juryinstructions.ca8.uscourts.gov/Criminal-Jury-Instructions 2017.pdf.

The two statutes at issue require proof of different facts. For example, Iowa Code Section 710.8 requires proof that Defendant (1) "harbor[ed] a runaway child," (2) "with the intent of allowing the runaway child to remain away from home," and (3) "against the wishes of the child's parent, guardian, or custodian." These are facts that 18 U.S.C. section 2251(a) does not require prosecutors to prove. *See Bird*, 287 F.3d at 715. For example, a parent can be convicted under 18 U.S.C. Section 2251(a) without having the child victim ever leave the parent's home. *See, e.g.*, *United States v. Demeyer*, 665 F.3d 1374, 1375 (8th Cir. 2012) (affirming 120-year sentence based on guilty plea to four counts under 18 U.S.C. Sections 2251(a) and (e) for defendant who raped, photographed, and videotaped his developmentally disabled daughter and transmitted the materials he

created). The focus of the Iowa statute is keeping a child away from his or her parent or guardian and either committing a criminal act involving the child or forcing the child to commit a criminal act. (Def. Ex. A at 3) (explaining that Defendant was reportedly heard "begging [a minor female] to jump on a train with him to get to Kansas City.") The statute does not require that the criminal act be of a sexual nature. On the other hand, the focus of the federal statute is preventing the sexual exploitation of minors and the production and dissemination of child pornography. Persuading, inducing, or enticing a minor to engage in sexually explicit conduct is a required element of the crime. *See* 18 U.S.C. § 2251(a)(2). In addition, the Government must prove, in relevant part, the Defendant acted with the purpose of producing a visual depiction or transmitting a live visual depiction of the sexually explicit conduct. The Government must also prove that Defendant knew or had reason to know the visual depiction would be transported across state lines or in foreign commerce; that the depiction actually was transported across state lines or in foreign commerce; or that the depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce by any means, including by computer or cellular phone. *Id.* at §§ (3)(4). These are not required elements of harboring a runaway child under Iowa law. Accordingly, the Iowa statute under which Defendant was charged on November 2, 2018 and the federal statute under which he is currently indicted are not "one offense for Sixth Amendment purposes" because they require proof of different elements. *Bird*, 287 F.3d at 715. Therefore, Defendant's federal Sixth Amendment right to counsel had not attached at the time he was interviewed by Investigator Deal.

Defendant raises two unavailing arguments in his reply brief regarding the alleged violation of his Sixth Amendment rights. First, Defendant argues, "The lack of facts in the indictment, as objected to by Defendant in his motion to dismiss, renders it impossible for the Court to determine which facts were involved and whether it was the same offense.

Defendant alleges that the State prosecutor's motion to dismiss should be sufficient evidence, especially when the United States is resisting motions to provide factual information in the indictment."

I note that the Court has now ruled that the indictment is not fatally defective for failing to specify facts involved. (Doc. 52.) Defendant's argument misses the point. The question is not "which facts were involved" in the case at bar; e.g., what events occurred, what actions Defendant took, and what consequences followed. The question is what facts the Government would have to prove to obtain a conviction. As discussed above, this analysis can be made by comparing the elements of the offenses.

Defendant also argues that under *Elkins v. United States,* 364 U.S. 206 (1960) the Government is prohibited from using evidence obtained illegally by state investigators under the separate sovereign doctrine. The problem with Defendant's argument is that the Government has not alleged that it should be allowed to use evidence illegally obtained by state investigators. The Government asserts no distinction between evidence obtained by state or federal investigators. Rather, the Government argues that Defendant's rights were not violated. For the reasons set forth above, I agree.

## C.     *Defendant's Fifth Amendment right to counsel was not violated during the interview.*

Defendant argues that Officer Deal violated his constitutional right to an attorney "when he continued to interact with [him] after [he] unquestionably requested the assistance of an attorney for the Iowa charges, at least twice."[4] (Doc. 28-1 at 4.) The Government responds that (1) Defendant did not unequivocally invoke his right to counsel, and (2) even if Defendant initially did invoke his right to counsel, he further initiated conversation with Investigator Deal, thereby waiving his right to counsel.

---

[4] Defendant makes this argument related to his Sixth Amendment rights. The Government responds to it in the section of the Government's brief related to Fifth Amendment rights.

### 1. *Defendant did not invoke his right to counsel.*

Custodial interrogations must be preceded by notice to the defendant that he has the right to remain silent and the right to have an attorney present during questioning. *Miranda v. Arizona* 384 U.S. 436, 479 (1966); *Dormire v. Wilkerson*, 249 F.3d 801, 804 (8th Cir. 2001) (citation omitted). If the defendant requests an attorney, "the interrogation must cease until an attorney is present." *Miranda*, 384 U.S. at 474; *United States v. Vanwaart*, No. 17-CR-4063-LTS, 2018 WL 3097048, at *3 (N.D. Iowa Apr. 10, 2018) (quotation omitted), *R. & R. adopted*, 2018 WL 2007051 (N.D. Iowa Apr. 30, 2018). This is a "bright-line rule" established in *Edwards v. Arizona*, 451 U.S. 477 (1981). *Smith v. Illinois*, 469 U.S. 91, 98 (1984) (quoting *Solem v. Stumes*, 465 U.S. 638, 646 (1984)).

However, "[i]f a [defendant] makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis v. United State*, 512 U.S. 452, 459 (1994); *Dormire*, 249 F.3d at 805 (citing *Davis*, 512 U.S. at 459). Although police officers are not required to ask clarifying questions, in situations where it is unclear if a defendant has invoked his right to counsel, "it will often be good police practice for the interviewing officers to clarify whether or not [a defendant] actually wants an attorney." *Davis*, 512 U.S. at 461–62; *United States v. Johnson*, 56 F.3d 947, 955 (8th Cir. 1995).

The Court must also consider whether the suspect limited any invocation to the right to counsel to specific terms. *See Connecticut v. Barrett*, 479 U.S. 523, 529 (1987) (finding a limited invocation of the right to counsel effective where suspect refused to make a written statement but freely gave an oral statement). A court may still admit statements made after a conditional invocation of the right to counsel if statements fall outside conditions delineated by the suspect. *See United States v. Jacobs*, 97 F.3d

11

275, 280 (8th Cir. 1996) (finding right to counsel was not violated when defendant stated he only wanted counsel in event he had to take a polygraph and he was never polygraphed); *United States v. Boyer*, 914 F.2d 144, 146 (8th Cir.1990) (holding that "ordinary meaning" of defendant's request for counsel applied only to making a recorded phone call, not to statements he made after requesting counsel solely for that purpose).

In this case, I find that Defendant did not unequivocally invoke his right to counsel. Although Defendant's first statements referring to counsel could be construed as unconditional requests for counsel, in context, they did not establish an *Edwards* bright line. Investigator Deal was justified in further inquiry into whether Defendant wanted to continue, and if so, the limits of any questioning that Defendant would impose. Once Investigator Deal said he was going to question Defendant, the relevant sequence moved quickly. From the time Defendant interrupted Investigator Deal to say, "Personally, I would like an attorney, though, I would," until he said, "I can talk right now, but I would like an attorney, though, regardless," only five seconds elapsed. (Gov. Ex. 1 at 11:54:41-46.) Two seconds passed from Defendant saying, "I would like an attorney," until "I can talk right now, but I would like an attorney, though, regardless." (Gov. Ex. 1 at 11:54:44-46.) This quick exchange is similar to the exchange in *McKinney v. Hoffner*, 830 F.3d 363 (6th Cir. 2016). In *McKinney*, the Sixth Circuit reviewed a decision of the Michigan Supreme Court, where Detective Hodshire interviewed Appellant McKinney after advising him of his of his *Miranda* rights. *Id.* at 367.

> [ ] Hodshire:  So, you know why I'm here to talk to you, right?
> [ ] McKinney: Yeah, yeah.
> Hodshire:    So, I'm here to get your side of the story of what happened and why. Okay. When we do investigations, we understand that things happen for certain reasons and some of those reasons we don't understand . . . so that's why I wanted to talk with you today to get your side of the story of what happened.

| McKinney: | Well if you don't mind, I just assume [sic] wait until I get a public defender or whatever. |
|---|---|
| Hodshire: | Well that's fine, but like I said. . . . |
| McKinney: | We can talk over all the other circumstances. |

*Id.* (ellipses in original). The interview continued without counsel and McKinney confessed to a murder. *Id.* At issue in McKinney's later habeas case was whether McKinney had unequivocally invoked his right to counsel during the interview. *Id.* at 368. The district court ordered that the writ be granted unless the state retried McKinney without the use of his confession. *Id.* The Sixth Circuit reversed, reasoning that "[s]tanding alone, McKinney's first statement may have been an unequivocal request for counsel. But McKinney's statement was not made in isolation. McKinney's statements, only two seconds apart, said that he wanted an attorney *and* that he wanted to talk." *Id.* at 373 (emphasis in original). The court therefore held that "[c]onsidering the deference we must afford state courts under AEDPA,[5] we hold that a fairminded judge could conclude that McKinney failed to unequivocally request counsel." *Id.* at 373-74 (footnote added).

The case at bar is somewhat analogous to *McKinney*. The time between Defendant's first statement that he wanted an attorney and his ambiguous or equivocal statement, "I can talk right now, but I would like an attorney, though, regardless" was five seconds. Investigator Deal barely had time to ask a clarifying question before Defendant again said, "I would like an attorney," to which the investigator started saying

---

[5] "Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, a federal court may grant habeas relief only when a state court's decision on the merits was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by' decisions from this Court, or was 'based on an unreasonable determination of the facts." *Woods v. Donald*, --- U.S. ---, 135 S. Ct. 1372, 1376 (2015) (citing 28 U.S.C. § 2254(d)). The AEDPA reflects a presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (reasoning that appellate court's decision was inconsistent with presumption that courts know and follow the law).

13

something that began, "Okay, okay. I. . ." and that Defendant cut him off with, "I can talk right now, but I would like an attorney, though, regardless," exactly two seconds after he had just asked for an attorney.

As in *McKinney*, none of the statements made by Defendant regarding counsel were made in isolation. The conversation was not broken by pauses. As mentioned above, the two participants interrupted each other frequently. In context, "a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel" and would have wanted to make certain what Defendant actually wanted to do, especially when Defendant first said he wanted an attorney before Investigator Deal read Defendant his *Miranda* warning or explained the reason for the *Miranda* warning. Thus, Investigator Deal's instinct to double-check what he heard, "Okay, you want an attorney?" was reasonable in context. The tone was not coercive and Investigator Deal did not deprecate Defendant's request for an attorney. It seemed that Investigator Deal was merely seeking clarification. When Defendant answered, "I would like an attorney," Investigator Deal appropriately responded, "Okay, okay. I [inaudible]." Again, Investigator Deal is cut off by Defendant, who said, "I can talk right now, but I would like an attorney, though regardless." This last response was ambiguous because it was unclear what "regardless" meant. It was unclear at this point of the conversation how "regardless" affected Defendant's request for counsel. Specifically, *when* Defendant wanted counsel was ambiguous. Therefore, Investigator Deal followed "good police practice" and sought clarification of Defendant's statement. *See Davis*, 512 U.S. at 461–62; *Johnson*, 56 F.3d at 955.

Defendant argues that Investigator Deal's continued interaction with him after he first asked for counsel "amount[ed] to exactly the type of 'badgering' to obtain a waiver that the Supreme Court was concerned with." (Doc. 28-1 at 6.) I have already determined that Defendant had not unequivocally asserted his "right to have counsel

14

present during custodial interrogation," as is necessary to trigger the *Edwards* bright line rule. *See* 451 U.S. at 484-85 (holding that once a defendant expresses "his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police"). Investigator Deal followed up with clarifying questions to understand what Defendant actually wanted while being interrupted. When Investigator Deal explained the legal and practical reasons for stopping the interview if Defendant requested an attorney, Defendant interrupted and said he wanted to talk, but expressed his belief that he could not get an attorney until he got to Iowa. Investigator Deal corrected Defendant and told him he had a right to an attorney in Nebraska. Defendant stated, "I don't want to speak with one right now. I want to wait 'til Iowa to speak with one." Investigator Deal did not take that as Defendant's final word, but told Defendant he was going to read his *Miranda* rights and that Defendant could decide what he wanted to do after hearing his rights. Nothing in this exchange constituted "badgering." Approximately forty seconds elapsed from the time Defendant said, "I can talk right now, but I would like an attorney, though, regardless" to when Defendant said, "Okay," after Investigator Deal informed Defendant he was going to read him his *Miranda* rights. During that time, Investigator Deal merely asked clarifying questions, accurately informed Defendant about his rights, and stated he would need to terminate the interview if Defendant invoked his right to counsel.

The Government argues that even if Defendant initially asserted his right to counsel, he waived it when he initiated discussion with Investigator Deal by saying he would "talk right now," but "would like an attorney, though, regardless." When a defendant initiates conversation with police after previously invoking the right to counsel "whether a valid waiver of the right to counsel and the right to silence had occurred is considered under the totality of the circumstances, including the necessary fact that the

15

accused, not the police, reopened the dialogue with the authorities." *Oregon v. Bradshaw*, 462 U.S. 1039, 1045 (1983) (quoting *Edwards*, 451 U.S. at 486 n.9) (emphasis omitted); *United States v. McPherson*, 16-CR-4095-LTS, 2017 WL 9470628, at *6 (N.D. Iowa Sept. 19, 2017), *R. & R. adopted*, 2017 WL 4778598 (N.D. Iowa Oct. 23, 2017). Initiation by a defendant occurs when the defendant evinces "a willingness and a desire for a generalized discussion about the investigation." *Holman v. Kemna*, 212 F.3d 413, 417 (8th Cir. 2000) (citing *Bradshaw*, 462 U.S. at 1045–46).

> However, even if a conversation taking place after the accused has expressed his desire to deal with the police only through counsel, is initiated by the accused, where reinterrogation follows, the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation.

*Bradshaw*, 462 U.S. at 1044 (quotation omitted); *McPherson*, 2017 WL 9470628, at *3. The "*Edwards* initiation inquiry and the *Miranda* waiver inquiry 'are separate, and clarity of application is not gained by melding them together.'" *McPherson*, 2017 WL 9470628, at *3 *(*quoting *Bradshaw*, 462 U.S. at 1045.) Thus, the analysis requires two steps: (1) determining if the defendant initiated the conversation, and (2) determining if the defendant executed a valid waiver of his *Miranda* rights. *Id.*

The cited cases all address situations that are factually distinguishable from the one at bar. In those cases, the defendants had been *Mirandized* before they invoked their right to counsel and there was more time between the defendants' initial invocations of their right to counsel and the subsequent conversations with police. *See Bradshaw*, 462 U.S. at 1042, 1046-47 ("either just before or during" trip to nearby police station; defendant initiated conversation); *Edwards*, 451 U.S. at 479, 486-87 (the next morning; defendant did not initiate conversation); *Holman*, 212 F.3d at 416, 421 (the next morning; defendant initiated conversation); *McPherson*, 2017 WL 9470628, at **2, 6 (approximately seven hours; defendant did not initiate conversation). Nevertheless, I

find that when Defendant stated, "I can talk right now, but I would like an attorney, though, regardless," he evidenced "a willingness and a desire for a generalized discussion about the investigation" after he had, as Defendant argues, invoked his right to counsel. As discussed above, after Defendant made this statement, Investigator Deal was justified in following up with clarifying questions, which led to Defendant stating that he wanted to speak without an attorney present.

Accordingly, I find that even if Defendant initially invoked his right to counsel, he initiated discussion with Investigator Deal when he said, "I can talk right now, but I would like an attorney, though regardless."

### 2. Defendant knowingly waived his Miranda rights.

A valid *Miranda* waiver must be knowing, intelligent, and voluntary. *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011); *McPherson*, 2017 WL 9470628 at *6. For a *Miranda* waiver to be voluntary, it must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Vinton*, 631 F.3d at 483 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). In fact, "[t]he sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion." *Colorado v. Connelly*, 479 U.S. 157, 170 (1986) (citations omitted). "A statement is involuntary if it was extracted by use of physical and or psychological pressure that overbore a defendant's will." *United States v. Bordeaux*, 400 F.3d 548, 560 (8th Cir. 2005) (citing *Wilson v. Lawrence Cty.*, 260 F.3d 946, 952 (8th Cir. 2001)). The Government bears the burden of proof to show waiver by a preponderance of the evidence. *McPherson*, 2017 WL 9470628, at *6 (citing *Bradshaw*, 462 U.S. at 1044; *Connelly*, 479 U.S. at 168. The court must consider the "'totality of the circumstances including the conduct of the officers and the characteristics of the accused, in determining whether a suspect's waiver or statements were the product of an overborne will.'" *United States v. Adams*, 820 F.3d 317, 323 (8th Cir. 2016) (quoting *United States*

*v. Havlik*, 710 F.3d 818, 822 (8th Cir. 2013)). To make this determination, courts consider the following personal characteristics of the defendant:

> (1) their age; (2) their general intelligence and education; (3) whether they were intoxicated or under the influence of drugs when consenting; (4) whether they consented after being informed of their right to withhold consent or of their *Miranda* rights; and (5) whether, because they had been previously arrested, they were aware of the protections afforded to suspected criminals by the legal system.

*United States v. Griffith*, 533 F.3d 979, 984 (8th Cir. 2008) (quoting *United States v. Bradley,* 234 F.3d 363, 366 (8th Cir. 2000) (internal citation omitted). The courts consider the following environmental characteristics in which consent to the interview was given:

> [W]hether the person who consented (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred.

*Id*. (citation omitted & bracket in original). The factors are not applied mechanically, but only serve as guidance for the court's analysis. *Id.*

Defendant argues that "the psychological coercion, Officer Deal's misleading statements, and Officer Deal's disregard for Vogelpohl's invocation of his rights render his statements coerced. Vogelpohl's subsequent waiver of his '*Miranda* rights' was also involuntary." (Doc. 28-1 at 8.)

First, whether Defendant was in custody is not at issue. He was under arrest and in an interrogation room at the North Platte Police Station. Second, there is no evidence of psychological coercion, in spite of Defendant's assertion in his pre-hearing brief that evidence at the hearing on this matter would establish that law enforcement knew Defendant had "severe mental health issues" and he was only 21-years-old at the time of

the interview. No such evidence was presented at the hearing, and nothing on the videotape of the interview causes me to conclude Defendant's mental or psychological capabilities were compromised either by illness, intoxication, or other impairment, and Defense counsel did not argue impairment by those means at the suppression hearing. In fact, at the beginning of the interview, when Defendant and Investigator Deal discussed how busy the North Platte train yard is, Defendant was able to converse appropriately and seemed knowledgeable about geography, trains, and the city of North Platte. In addition, Defendant does not argue that he was threatened, physically intimidated, or punished by the police, and I see no evidence of such misconduct.

Third, Defendant argues that he relied upon promises or misrepresentations made by Investigator Deal to his detriment. Specifically, he argues that Investigator Deal lied when he downplayed what he knew about the Iowa investigation by stating that "he didn't know what was going on in Iowa," but that he could not imagine Defendant was facing a "high-level felony" based on the level of the bond. Defendant makes two arguments related to alleged misrepresentations that Investigator Deal made: "Deal's report establishes that Iowa Dept. of Public Safety Special Agent McVey told Deal they were trying to prove a statutory rape charge in addition to the case for harboring a runaway. Thus, Deal did know what was going on in Iowa, and he would have known that statutory rape is a felony (what 'high level' means is debatable)." (*Id.*) However, Investigator Deal's report was never offered into evidence. Therefore, the only evidence in the record demonstrating what Investigator Deal knew at the time of the interview is the information contained in the Iowa arrest warrant. Accordingly, nothing in the record supports a finding that Investigator Deal was downplaying the seriousness of the Iowa charges against Defendant. As an aggravated misdemeanor, Harboring a Runaway is not a "high-level felony" under Iowa law. *See* Iowa Code § 710.8(4). Thus, I find that Investigator Deal's statement was not a misrepresentation of law and was not stated in such a way as

to promise anything. As previously mentioned, Defendant was not threatened, physically intimidated, or punished by Investigator Deal. Likewise, I do not find that Investigator Deal was "acting like Columbo" or some other deceptively bumbling "good cop" in an effort to lull Defendant into waiving his rights, an argument Defense Counsel made at oral argument. In fact, the "rapport-setting" portions of the interview, wherein Investigator Deal and Defendant introduced themselves and Investigator Deal explained how he happened to be talking to Defendant about something that occurred in Iowa lasted approximately two minutes. During this brief time, Investigator Deal appeared friendly and competent. He did not resort to any illegal subterfuge or coercion.

Fourth, Defendant also argues that Investigator Deal lied when he said that he could not talk to Defendant that day if Defendant invoked his right to counsel. Defendant asserts that this was "at least misleading if not an outright lie." (Doc. 28-1 at 8.) First, in context, it is not obvious that Investigator Deal was stating that he could never talk to Defendant if Defendant invoked his right to counsel. In the give-and-take of conversation, Defendant cut Investigator Deal off twice when Investigator Deal was explaining what would happen if Defendant invoked his right to counsel. Defendant interrupted Investigator Deal at 11:55:02 when Investigator Deal was saying, "I'd like to talk with you, but again, it's your right to have that attorney, but if you want to talk with me today, you're more than welcome to, but. . . ." Defendant again interrupted Investigator Deal at 11:55:19 when Investigator Deal was saying, "But you are allowed an attorney, so if you want to speak with one before talking with me, that's your right, but I can't talk with you unless. . . ." Investigator Deal could have been trying to finish sentences with statements to the effect of, "I cannot talk to you today until we get an attorney in the room with us" or "Because of the time it takes to get an attorney, I won't have time to talk to you today." Investigator Deal certainly did not equivocate when Defendant misunderstood that he was entitled to counsel in Nebraska. On the contrary,

Investigator Deal immediately explained that Defendant was entitled to counsel even though he was not charged with a crime in Nebraska. This lends support to the conclusion that Investigator Deal was not trying to subvert Defendant's right to counsel in anyway. In addition, similar language is often used by law enforcement during interviews. *See, e.g.*, *United States v. Hunter*, No. 4:15-CR-40071-LLP, 2015 WL 4546245, at *2 (D.S.D. July 27, 2015) ("If you want [an attorney] right now just tell me that you want one. OK, but and then our conversations are done because I can't talk to you."), *R. & R. adopted*, 2015 WL 5098641 (D.S.D. Aug. 31, 2015); *United States v. Warren*, No. 4:08CR189RWS-DDN, 2008 WL 3010156, at *4 (E.D. Mo. July 24, 2008) ("When you ask for a lawyer, we're done talking. . . ."), *R & R adopted*, 2008 WL 4512524 (E.D. Mo. Sept. 30, 2008); *United States v. Jesus Abarca*, No. 1:05CR175JCH, 2006 WL 1300604, at *12 (E.D. Mo. May 9, 2006) ("[I]f you want [an attorney] present, then I can't talk to you anymore."), *R. & R. adopted sub nom*, *United States v. Abarca*, 2006 WL 1663301 (E.D. Mo. June 14, 2006).

That Investigator Deal was unable to finish articulating the entire thought does not mean he was trying to somehow make a "one time offer" to Defendant like the detective in *Vanwaart*, who implied that waiting until the next day for an attorney would make the defendant's proffer less valuable to him. 2018 WL 3097048, at *2 ("By tomorrow everybody is going to know, or they probably already do know. And what good are you to me then?") (ellipses omitted). On the contrary, Investigator Deal did not make any coercive statements indicating that Defendant would suffer consequences if he did not speak to Investigator Deal at that time. There was no incentive offered to speak without benefit of counsel. Moreover, even if Investigator Deal was saying that he could not speak to Defendant, he would have been telling the truth. He would not have been allowed to speak to Defendant at that time had Defendant invoked his right to counsel. The *Miranda* warning sufficed to fill in the particulars, specifically that Defendant could

be interviewed once an attorney was secured. As previously discussed, Defendant gave no indication that he did not understand his *Miranda* rights, had previous experience with law enforcement because he had been arrested before, and does not argue that he was impaired or incompetent in any way.

Finally, even if I were to interpret Investigator Deal's statement as a falsehood, that, alone, would not undermine Defendant's waiver because "questioning tactics such as a raised voice, deception, or a sympathetic attitude on the part of the interrogator will not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne." *Jenner v. Smith*, 982 F.2d 329, 334 (8th Cir. 1993) (noting that the *Supreme Court* opined that "very few people give incriminating statements in the absence of official action of some kind") (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973)). I have concluded that Defendant's will was not overborne by anything that Investigator Deal said or did during the interview. Investigator Deal did not make any threats, promises, or statements of false consequences for failing to speak at that time. In fact, Investigator Deal stopped Defendant when he tried to start talking about "the last few weeks" without being *Mirandized*. (Gov. Ex. 1 at 11:54:28.) Investigator Deal clearly did not accept Defendant's invocation of his willingness to speak without counsel present without a *Miranda* warning. Rather, Investigator Deal made Defendant aware of his rights so he could make an informed decision. Therefore, Investigator Deal read the *Miranda* warning and ascertained that Defendant understood his rights after Defendant indicated a willingness to speak. Investigator Deal then obtained Defendant's *knowing* waiver of those rights. I find that Defendant's waiver was knowingly and intelligently "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Defendant stated that he understood his *Miranda* rights and knew the rights he was waiving. Defendant had been arrested in

Missouri, so he likely had at least one previous experience with the *Miranda* warning. The waiver was voluntary because it was "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* On the contrary, I find that Investigator Deal fully informed Defendant of his right to have counsel in Nebraska and would not allow Defendant to waive his right to counsel before hearing his *Miranda* warning and giving a knowing voluntary waiver of his rights. Therefore, I find that the statements Defendant made during the interview with Investigator Deal should not be suppressed.

## IV. CONCLUSION

Therefore, I respectfully recommend that Defendant's Motion to Suppress **(Doc. 28) be DENIED.**

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 17th day of June, 2019.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa